Good morning, and may it please the Court, I'd like to reserve approximately five minutes for rebuttal. All right. The First Amendment is, of course, implicated whenever a city requires a bookstore, a newsstand, a theater, or an adult business to obtain a license before it can begin to operate. Those are the words of Justice Stevens in his concurring opinion in City of Littleton. And other cases, such as Ward v. Rock Against Racism and Southeastern Promotions, established that the same is true for live music and other forms of entertainment. An ordinance that requires a license to engage in First Amendment-protected activity is a form of prior restraint. Well, it's a little more than that, because it only applies if you serve alcohol and have more than 100 people. So it seems obviously focused at events that have a size and the presence of alcohol, which can be associated with problems, and then seems focused in nuisance language about those kinds of issues that can arise from a large congregation of people where there's a live event and the alcohol is flowing. So it's a little different from just a pure speech regime. But, Your Honor, the distinguishing feature is the live entertainment. If you have a venue which has 150 people and serve alcohol, and you don't want to speak, you don't want to present a message, you don't have to get the license. It's only the license that puts you in a separate status than other places that have the alcohol in the larger department. Are the rules that are applied here different from the nuisance criteria that would be applied generally under other provisions of law to other businesses or entities? They are, Your Honor. They're different in a significant respect. And that is that they appear within a speech licensing scheme. I understand that they're situated within a regime that's specific, but when you get to the underlying nuisance standards and you're in that regime, are those nuisance standards that are then being applied in any way substantively different from the familiar nuisance standards that apply under other provisions of law to other entities? Yes, they are. And it may be a slight distinction between substance and process. But in order to apply those in other situations, the city has to go into court, into a state court, where all of the benefits of due process are applied. And all past law interpreting those statutes is applied. As far as the definition, though, Your Honor, and if this is what you're asking, I will give you an absolute yes. The definition, the words used are absolutely the same. Okay, so the underlying substantive standard is the same, but the procedural framework within which they are applied is very different. That's correct, Your Honor. And it makes all the difference. That's what makes it a prior restraint. An ordinance that requires to engage in First Amendment-protected activity has to comport with the constitutional requirements. As a form of prior restraint, the licensing schemes commonly contain two defects. One is discretion.  Chapter 60, the chapter that regulates live entertainment, suffers from too much discretion in some of its provisions. And Chapter 6.62, which applies to the promoters, has the opportunity for delay. So both problems occur, but one in each of the two challenged chapters. Can you be a little more specific on what you mean by having too much discretion? Yes, Your Honor. The risk of undue discretion is that the licensing authority may either deny an initial request for an application or suspend or revoke an existing application. If there's too much discretion, they can make those decisions based on the content, and no one would have any way of knowing because it's difficult to tell. And so that's why too much discretion is a problem, if that's what you're asking. And there's plenty of cases cited in Diamond's briefing that demonstrate the kind of language that gives too much discretion. And generally, very generally, something like anything that is a health and safety violation, that's too much discretion because it gives that licensing authority. There may be something that they can hang their hat on, but it could be. There's a risk of censoring content. I'm not understanding your argument clearly enough. What provision are you saying gives too much discretion, and what language within that provision would allow the censoring of speech? Just a second, Your Honor. So it's essentially the provisions that I've referred to in the briefing as the nuisance statutes. So they are the ones that incorporate that broad language that one normally sees in nuisance statutes. So one is at 6.60.290, which says that the permittee shall not conduct the permitted business in a manner that creates or results in a public nuisance, as defined by the city code section 1.13.050. That's the city's nuisance statute, or the California nuisance statutes, which are at civil code 3479 and 3480. And the language in those sections is as follows. For example, in the city code, chapter 1.13.050, says the maintenance or use of a property in the city in a manner that jeopardizes or endangers the health, safety, or welfare of persons on the premises or in the surrounding areas. So that's the kind of broad language. The state nuisance statutes have similar language. Is your challenge just facial or also facial and as applied? The appeal is based on the facial challenge, Your Honor. Okay, so no as applied challenge is presented to us. That's correct, Your Honor. So the difference really makes, again, how it was applied. If the city applied the nuisance statutes, if there was a problem, and the city had the option to do this, but they didn't. They applied the nuisance statutes. That is a law of general applicability. They apply it to all businesses equally. Just like in Arcara, we would be subject to that. But that's not what happened. Here what happened was it was applied within the context of the speech licensing code. And one of the other things that I asked the court to focus on is the remedy. For a nuisance, if you go in and there's a public nuisance, they could close down the business. I think there may be financial penalties, et cetera. The penalty here, if there's a violation of these particular provisions, is that your right to speak is taken away. Your live entertainment permit is revoked. And, therefore, that's why it's a prior restraint. It's all focused on your right to speak. And that makes a substantial difference. But if it occurs after the nuisance is found, so you've been found to have created a nuisance, and, therefore, the permit is revoked, how is that prior? It seems post. All of the courts that have addressed this issue have treated revocations and suspensions the same way. The same precise language is required. Because the police chief, and we don't have to show that this happened here, and I'm not suggesting it did happen here. We don't know. This is the reason why the courts have set up the law this way. But the chief could say, I don't like hip-hop music. I don't like the message it's sending. This club has a lot of hip-hop music. This club has allowed some minor infractions to have occurred. They fit within this broad definition. How about if I just shut them down based on creating a public nuisance? And all I have to do is issue a revocation notice, and then we have the administrative hearing. So that's what really makes the difference here. And, Your Honors, I'm at five minutes, so if I might be allowed, I'd like to reserve that time for my rebuttal. All right. Let's hear from the city. Yes, thank you, Your Honors. Margo Laskowska for the city of San Jose. May it please the court. I would like to address a couple of inaccuracies in counsel's argument. Opposing counsel mentioned that in response to the court's question, that in order to apply the Section 113.05.0, the city has to go to other businesses other than public entertainment businesses, that the city has to go to court. That's actually not accurate. That's in Title VI in Section 602340, which is in the supplemental excerpt of record. That says that there are cumulative remedies. That means that the administrative enforcement of Title VI is, in addition to all other legal remedies, administrative, criminal, or civil, which may be pursued by the city to address any violations of this title. That pertains generally to all municipal code provisions, but specifically it's also mentioned in this Title VI, that there are three types of remedies as far as violations of any. I thought his point was not so much that you could have gone to court against the entertainment facility, but that the other businesses don't have this administrative machinery as one of the tools of enforcement. Is he wrong in saying that? That's right, yes. It's the same, basically. The city has a choice how to address a violation, whether through the permit process or through an administrative citation, which results in a fine. Not an entertainment business had inadequate security and there was a shooting incident, then you could do an administrative process against them and not go to court. That's correct, Your Honor. Under a different set of the city code. Yes, because it's all in Title VI, and they are all subject to the same rules. For example, Title VI regulates businesses such as automobile dismantlers, bingo, dance halls, leafleting, cannabis businesses, business sales, basically all sorts. It's very comprehensive. There are a lot of businesses that are subject to city permitting under Title VI, including public entertainment businesses. So they're all subject to the same rules. And the same nuisance provisions as a condition for applying for a permit also applies to bingo, retail businesses, some of the examples cited in the district court order? Yes, that's correct, Your Honor. There's no distinction between the nuisance requirements that applies to the live entertainment as opposed to, say, a bingo hall. Am I correct? That's absolutely correct. Yes, and if I can elaborate on that, Your Honor. Section as to the general provisions in Title VI that pertain to all businesses, they include Section 6.02.130, subsection A14, which is in the supplemental record, and that specifies the criteria for denial, suspension, or revocation of all businesses that are subject to Title VI. And this section is exactly the same as the section that is challenged by Council 6.60.290. They include the same exact language incorporating the general nuisance section 1.13.050, and they also incorporate the two civil code sections regarding public nuisance. So it's the same language. And I also wanted to address Council's challenge to subsection A1 of the public nuisance definition in Section 1.13.050. He challenges the language as too general, that the maintenance or use of property in the city in a manner that jeopardizes or endangers the health, safety, or welfare of persons on the premises or in the surrounding area. He claims that that's too general. This public nuisance definition also has another subsection. In A3, it incorporates into the definition of nuisance any violation of state law, for example. It's more broad. It incorporates any violation of this municipal code, any other city law or federal regulation. But specifically because it incorporates, it says the maintenance or use of property in the city in a manner that violates or real property that has been the site of a violation of any provision of this code or any other city, state, or federal law or regulation. And here, state law, among other things, can be the two civil code provisions that are the public nuisance provisions. And I think it's pretty well established that the two civil code provisions, the statutes rather, are well analyzed under state law. And there are clear criteria for finding a public nuisance under those provisions. So there shouldn't be any question of any vagueness there. The district court was correct when it found that the permitting scheme in Chapter 660 amounts to restrictions on economic activity or more generally on non-expressive conduct. The challenge nuisance provisions do not show constitutionally protected speech, but rather deter nuisance because they encourage compliance. For example, as here, the problem was with security requirements. So what's the rationale for the, I understand that for the permitting for the facility, but what's the rationale for permitting the promoters? Promoters, I think it's because these are businesses and as the two declarations from our police officers that are in the record, in the supplemental excerpts of record, they mention problems in the past and potential problems that can occur with promoters. For example, some of them are associated with more violence, for example, or some of them hide their names and it's hard to know who they are and find them. So that's why the permitting process requires various disclosures as part of the permitting process. The name and address of the individual, the name and address of the business, fingerprinting, all these things that are necessary for enforcement. What's the time frame once one applies to be a promoter? Is there a time frame within which you have to act on that application? Well, there is no definite time frame. The statute says... Isn't that where Diamond's concerned, that there is no time frame? They can just be held indefinitely? Well, it says reasonable time and our practice, well, there is really no practice in terms of the promoter's license because there haven't been any applications for such licenses. And that's in the record that in those declarations that we have in this supplemental excerpt that the city has not issued because there is no interest for such permits. Because one of the exceptions to the permit requirement for a promoter is that if the promoter contracts with a business, then that contract itself covers it and the permit is not necessary. So if, for example, there was a delay theoretically in issuing this permit, the promoter could turn around and contract with the business that basically is hiring him or her and they wouldn't need the permit anymore at all. In terms of this issue, the challenge that Diamond is making, that particular section 662-400, and I briefed it quite fully in my respondents answering brief, that section has not actually been challenged by them. And that is because it's not in their operative complaint. It was not in the first complaint. It was not in the amended complaint. And the court basically, because they made a mistake, they cited a different code section. Are you talking about the provision that was stricken by the court? Yes, Your Honor. Yes. So they never, they knew that it was stricken, but they never sought amendment of the complaint in order to include it. And they also didn't challenge on appeal the order to strike. So I don't think this is properly before this court, but nevertheless, I think that there is a saving clause because of the exception for a contract between the... charge that there was a nuisance and who decides it. I mean, it overlaps within the same agencies in ways that are not reassuring to someone who's going through that process. I think that, yes, I understand Your Honor's question. I think it arises out of the fact that the permit is granted by a permitting unit in the police department. And then any challenge to the permitting decision is reviewed by the police chief or his designee, which in this case was a deputy chief. And that's the first level of review. The second level of review is already an appeals hearing board, which is an independent body. And then from there, obviously, there is an opportunity for a petition for a writ to the state court or a challenge in federal court here. So there is no due process issue here. And just by the fact that the police... that the... initially the recommendation for suspension, also the police chief's recommendation included a revocation of the permit. And on review of that recommendation, the deputy chief reduced the punishment for merely a suspension that points to the fact that it was an independent review, even though they're all with the same agency. And so, yes. Okay. One quick question. Do you think that the administrative review or state court could have decided the federal constitutional question? The state court? Yes, Your Honor. Obviously, yes, it could have. And I argued in my brief that they... that registrars got a place because they could have. But then an England reservation is meaningless. Their only vehicle within the state procedural mechanism was to go up the chain you just described to an administrative writ. And now you're saying essentially that, well, you know, you either give up your appeal of the administrative ruling in state court, or you give up your federal forum for your federal claim because you're going to claim race judicata if you do the administrative appeal. And even if you do an England reservation, I don't understand that. Well, the England reservation is a minor point, Your Honor, I think. And it's a technicality because it's because they were not thrown out of federal court by means of an abstention, for example. Yeah, but they were not thrown out of federal court, but they filed in federal court first. They wanted to present a due process challenge. They wouldn't have really been able to present the due process challenge unless they exhausted the state machinery to complete the process. And you're saying that then that means the federal forum they elected first has to be forfeited. I'm not sure if there is an exhaustion question in state court, Your Honor. And also, they could have brought supplemental cause of action for the writ. I think that the federal courts can also handle those. So I don't think there is an issue there. All right. Our questions have taken you over your time, but I thank you very much for your argument. You still have some time on rebuttal. Thank you, Your Honor. I appreciate it. And the city requests the court to affirm the judgment. Thank you. Thank you. Thank you, Your Honor. A couple of quick things that I'd just like to fire off. One is the definition of or the amount of time to process a promoter permit. The city concedes that it says reasonable, but the law is very clear that it has to be reasonable, short, and specified. It's clear it has to be a specific amount of time. So there's a violation there. FWPBS is really the guiding case here. And since this statute does regulate speech, we have to follow the U.S. Supreme Court's guidelines, which says ask those questions. One is that short, reasonable, and specified time frame in the code, which it's not in 6.62. And then also if there's undue discretion, which is in the first one. Judge Collins, your understanding of England reservation process is spot on, and I won't go any further into that. Clearly, we made it clear that we wanted to preserve these issues for the federal court. With regard to the nuisance statutes being applicable to all businesses, absolutely. I agree with that. That's very clear. This is the main point in my case. But the remedy is not the same. You don't take away someone's right to speak when you apply those generally in the same way that you apply them to other businesses. Here, the city's not applying it in the same way that they apply it to other businesses. They're saying that this violation results in a suspension of your right to present live entertainment, which is a form of pure speech. It's not conductive speech. It's pure speech. And for the reasons that we discussed earlier. One more quick point on the due process. Judge Burgess, you're right. There is a big concern where the direct report of the chief of police is ruling on, is making a judicial decision on the chief's initial administrative decision. But courts have ruled that that can be okay. Here, compounding that is this issue that the city, when they started their investigation, they asked us, my client, for their videotapes. We provided those videotapes without making a copy. They didn't know that they were being investigated and without reviewing the videotapes. The police then testified as to what they saw on those videotapes while refusing to provide a copy of the tapes to counsel so that we could engage in meaningful cross-examination. That just seems to me patently unfair. There's no direct case law on this, but to have someone testify about what they're looking at, what they saw on the tape, and then just to say, trust me, this is what was on there, but we're not going to show it to you. That just seems to me like a patently unfair situation. Is that an as-applied challenge? Are you making an as-applied challenge? I thought we clarified that. Right. I apologize for misspeaking. The facial challenges were for the First Amendment issues, but the due process claim here isn't applied. Due process, it's both facial and as-applied. First Amendment, it's just facial. Correct, Your Honor. Okay. And with those points, I want to give the court an opportunity for another 60 seconds if there are any pressing questions, because I really want to make sure that you don't go back and think of something that I could have clarified for you. No, we don't have any further questions. Thank you very much for your argument. The matter is submitted. Thank you.
judges: Nguyen, Burgess, Collins